CLERK'S OFFICE
A TRUE COPY
Jul 08, 2025
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
information associated with a certain cellular device assigned with Vehicle Identification Number (VIN) 2G4WS52J9Y1351444, with an unknown listed subscriber, that is in the custody or control of AT&T Corporation, a wireless communications service provider that is headquartered at North Palm Beach, Florida

Case No. 25-M-432 (SCD)

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the ______ District of ______ *(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

Please see Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before 7-22-25 *(not to exceed 14 days)*

☐ in the daytime 6:00 a.m. to 10:00 p.m. ☒ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to Honorable Stephen C. Dries.
*(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☑ for 30 days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of ______.

Date and time issued: 7-8-25. 10:30 am

Stephen C. Dries
*Judge's signature*

City and state: Milwaukee, WI

Honorable Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

**Return**

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| --- | --- | --- |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: ____________________

____________________
*Executing officer's signature*

____________________
*Printed name and title*

# ATTACHMENT A

## Property to be Searched

1. Records and information associated with the cellular device assigned Vehicle Identification Number (VIN) 2G4WS52J9Y1351444 ("the SUBJECT ACCOUNT"), with an unknown listed subscriber, that is in the custody or control of AT&T Corporation (AT&T or Provider), a wireless communications service provider that is headquartered at North Palm Beach, Florida.
2. The SUBJECT ACCOUNT.

# ATTACHMENT B

## Particular Things to be Seized

I. Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

The following subscriber and historical information about the customers or subscribers associated with the SUBJECT ACCOUNT for the time period **May 21, 2025, to Present**:

a. Names (including subscriber name, usernames, and screen names);

b. Addresses (including mailing addresses, residential addresses, business addresses, and email addresses);

c. Local and long-distance telephone connection records;

d. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

e. Length of services (including start date) and types of service utilized;

f. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"), Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Service

Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

g. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

h. All records and other information (not including the contexts of communications) relating to wire and electronic communications sent or received by the SUBJECT ACCOUNT, including;

   i. The date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

   ii. Information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received, as well as per-call measurement or timing advance data (PCMD, RTT, True Call, Advance Timing, NELOs, or equivalent).

II. Information to be Seized by the Government

All information described above in Section I that will assist in identifying the location of the vehicle including patterns of travel and areas where the subject has frequented.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly describer in this Warrant.

CLERK'S OFFICE
A TRUE COPY
Jul 08, 2025
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

information associated with a certain cellular device assigned with Vehicle Identification Number (VIN) 2G4WS52J9Y1351444, with an unknown listed subscriber, that is in the custody or control of AT&T Corporation, a wireless communications service provider that is headquartered at North Palm Beach, Florida

Case No. 25-M-432 (SCD)

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

located in the __________ District of __________ , there is now concealed *(identify the person or describe the property to be seized)*:

Please see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 1591 | human trafficking by force, fraud, or coercion |

The application is based on these facts:

Please see Affidavit.

☑ Continued on the attached sheet.

☑ Delayed notice of 30 days *(give exact ending date if more than 30 days:* ________ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Kathrine L Sadler
*Applicant's signature*

Kathrine L. Sadler, Special Agent - FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone *(specify reliable electronic means)*.

Date: 7-8-25

Stephen C. Dries
*Judge's signature*

City and state: Milwaukee, WI

Honorable Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Kathrine L. Sadler, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with a certain cellular device assigned with Vehicle Identification Number (VIN) 2G4WS52J9Y1351444 ("the SUBJECT ACCOUNT"), with an unknown listed subscriber, that is in the custody or control of AT&T Corporation (AT&T), a wireless communications service provider that is headquartered at North Palm Beach, Florida. As a provider of wireless communications service, AT&T is a provider of wireless communication service, as defined in 18 U.S.C. § 2510(15).

2. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) and Federal Rule of Criminal Procedure 41 to require AT&T to disclose to the government the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

3. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since May of 2019. I have been assigned to the FBI Milwaukee Child Exploitation and Human Trafficking Task Force since July 2022. My duties include investigating violations of federal law, including but not limited to offences involving coercion, enticement, and sexual

exploitation of minors, forced labor, and sex trafficking. Prior to being employed as a Special Agent with the FBI, I was employed as a Staff Operations Specialist for the FBI since 2010.

4. I have received training related to the investigation and enforcement of federal human trafficking laws. As a result of this training and my experience, I am familiar with the ways traffickers use to recruit, communicate with, control, and exploit their victims. These include posting online advertisement for commercial sex dates, communicating electronically with prospective commercial sex buyers, distributing sexually explicit images and videos of trafficking victims, and transporting victims to commercial sex dates. I have also received more general training and gained experience in interviewing techniques, search warrant applications, the execution of searches and seizures, and processing and identification of electronic evidence.

5. The facts of this affidavit come from my personal observations, my training and experience, information obtained from citizen witnesses, and information reported to me by other law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable. Throughout this affidavit, "case agents," "officers," "detectives," or "investigators" refers to the federal, state, and local law enforcement officer who have participated directly in this investigation, and with whom I have acquired information from and/or had contact regarding this investigation. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## THE RELEVANT FACTS

6. The United States is investigating Hector Duarte for violations of Title 18, United States Code § 1591 (human trafficking by force, fraud, or coercion).

7. On June 25, 2025, at approximately 02:15 PM, Cudahy Police Department (PD) officers were dispatched to 6275 S. Packard Avenue, Cudahy Wisconsin regarding a check welfare call for service. Officers made contact with Charlotte Japhet (Japhet) (DOB: XX/XX/2005) and her child, Carter J. Mugabo (DOB: XX/XX/2024). Japhet was transported to Cudahy PD where she disclosed to officers that she was kidnapped in Rockford, Illinois approximately three weeks ago by a male who she only knows as "Roberto," later identified as Hector Duarte (DOB: XX/XX/1990), hereinafter referred to as Duarte.

8. Law Enforcement was able to identify "Roberto" as Duarte by conducting open-source research and locating a TikTok video posted on 06/22/2025 from TikTok account "charlottejap24" which showed Japhet in a vehicle with a Hispanic male. Law Enforcement tools were used which identified the Hispanic male to potentially be Duarte with high probability.

9. Case Agent interviewed Japhet at the Cudahy PD who stated she started to communicate with Duarte over Snapchat three months prior to meeting Duarte in person. Initially, Japhet proved her Snapchat account as "c_j20500" and recalled Duarte's Snapchat username to be "Roberto" something. Later in the evening of June 25, 2025, Japhet's aunt, Michelle C. Japhet, came to pick up Japhet and showed screenshots of conversations between her daughter and Japhet showing Japhet's Snapchat username to be "cj2005_772". During the time Japhet communicated with Duarte, she lived at her aunt's house with her son. Duarte asked her when her aunt was working and picked Japhet and her son up while her aunt was

away. Japhet believed her and Duarte would be in a relationship and live together in Rockford, Illinois, however Duarte drove her and her son approximately two hours on the highway to an apartment in the Milwaukee, Wisconsin area. Duarte told Japhet they were there to smoke weed, however Japhet was forced to have sex with five or six males that were already in the apartment. In exchange, Duarte received $2,000 from the men in the apartment. Japhet stated while she was forced to have sex with the men, Duarte had her son.

10. After this incident, Duarte drove Japhet and her son to a forest reserve to sleep for the night. Japhet was unfamiliar with the area and was not able to provide a location of the forest reserve. Japhet tried to escape while Duarte was sleeping but he woke up and started to hit her, punching her in the face. Duarte threatened to physically hurt her son Carter and told her that it was easy to snap a baby's neck. Japhet became fearful of trying to leave Duarte after he made those statements.

11. Japhet disclosed that Duarte raped and choked her several times while she was with him. Duarte used physical violence on her if she didn't do something he wanted her to do. Duarte wanted Japhet to do drugs, such as crack cocaine, heroin, and ecstasy, have sex with his friends, and drink. Duarte tried to make her do drugs. If she said "no," he would beat her. Japhet disclosed she did take drugs once, crack cocaine, because she was tired of getting beat. Duarte never gave Carter any drugs, only threatened to put heroin in his bottle and make Cater drink it.

12. Japhet disclosed to Case Agents that she was forced to have sex with Duarte's friends approximately five times per day, every day of the week. She had sex with multiple men and sometimes multiple men at the same time. This took place at apartments or houses, but never in hotels or in cars. Duarte would drive her to the sex dates and would watch her.

Her son, Carter, would be with Duarte when she was forced to have sex. When the men were done having sex with her, they would pay Duarte in cash. Japhet did not know how Duarte found the men she was forced to have sex with. Duarte also took nude and partially nude photos of her.

13. Japhet was unable to provide locations of where Duarte had her do sex dates or the locations of where they would spend the night, but recalled driving over Hoan Bridge in Milwaukee, Wisconsin multiple times per day. Japhet stated at night they would sleep out of Duarte's vehicle at forest reserves, parks, and parking lots. They would get food from Walmart or fast-food places like McDonald's. Japhet was not allowed to leave Duarte's sight, and he was always by her side.

14. Japhet stated on the day she escaped Duarte they were driving, and while stopped at the intersection of N. Chicago Avenue and E. College Avenue, she saw two businessmen on the side of the road. Once Duarte stopped the vehicle, she got out of the car with her son and ran to the businessmen she had seen. They took her to the gas station and called the police for assistance.

15. After Case Agents made an identification of Duarte with high probability, an unmarked photo of Duarte was sent to Japhet's aunt and shown to Japhet. Japhet identified the unmarked photo of Duarte as the male that had taken her and her son from Rockford, Illinois to Milwaukee, Wisconsin and who had forced her to have sex in exchange for money.

16. On June 26, 2025, Case Agents obtained records from Wisconsin Department of Transportation which identified Duarte is the registered owner of a gray 2022 Chevrolet Equinox with Wisconsin plate BAC5283 and VIN: 2G4WS52J9Y1351444.

17. On July 3, 2025, Case Agents obtained surveillance video from Walmart located at 222 N. Chicago Avenue, South Milwaukee, Wisconsin, which is just south of the call for service referenced above, across College Avenue. This video showed a dark colored SUV parking near the front entrance on 06/25/2025 at approximately 02:03 PM. A male driver is seen getting out of the vehicle, which, based on a review of prior booking photos, appears to be Duarte wearing a hat, t-shirt, jeans, and black shoes. Duarte entered Walmart at approximately 02:03 PM and at approximately 02:06 PM, Japhet is seen exiting the rear passenger side door of the dark colored SUV. Japhet is seen grabbing a bag/backpack from the vehicle, walking to the driver side and getting her baby out of the SUV. Surveillance footage shows Japhet running east bound at the Walmart parking lot approximately 02:07 PM, then north bound. For a few seconds, Japhet is seen stopping at a white Van, then keeps walking and goes out of frame.

18. Walmart surveillance footage shows Duarte walk to a green Eco ATM kiosk (an ATM to sell electronics such as cellphones, laptops, tablets, etc.) in the front of the Walmart store at approximately 02:04 PM. Duarte is at the kiosk until approximately 02:09 PM when he leaves the kiosk, exits Walmart, and enters the SUV. At approximately 02:11 PM, Duarte exits the vehicle, looking around the lot, and walks back towards Walmart entrance and enters Walmart a second time at approximately 02:11 PM. Duarte is seen walking towards the bathrooms at approximately 02:12 PM and waits there until approximately 02:13 PM. Duarte then exits Walmart, looking around the parking lot while walking faster, and enters the SUV. At approximately 02:14 PM, the SUV reverses out of the parking spot and drives to the Wendy’s parking lot located east of Walmart. Duarte gets out of the SUV at Wendy’s at approximately 02:14 PM and the surveillance video cuts out.

19. Case Agents obtained surveillance footage from Wendy's located at 240 N. Chicago Avenue, South Milwaukee, Wisconsin, which showed Japhet coming from the Walmart parking lot at approximately 02:08 PM on June 25, 2025. Japhet appear to be holding something or someone, while wearing a backpack. Japhet then walks north bound on N. Chicago Avenue.

20. Case Agents obtained surveillance footage from Taco Bell located at 112 N. Chicago Avenue, South Milwaukee, Wisconsin, which showed Japhet coming from the south at approximately 02:11 PM on June 25, 2025, running north across the Taco Bell parking lot carrying something/someone wearing a backpack.

21. Cudahy PD obtained surveillance footage from Petro Mart gas station located at 6275 S. Packard Avenue, Cudahy, Wisconsin. The camera which faces south, showed three individuals coming into the frame at approximately 02:13 PM. The three individuals are seen crossing College Avenue at approximately 02:14 PM, one of which is Japhet holding her child and wearing a backpack and enter the Petro Mart gas station at approximately 02:15 PM.

22. Furthermore, your affiant knows through experience and communications with other law enforcement members that newer vehicles, such as a 2022 Chevrolet Equinox, are frequently equipped with cellular modems inside their vehicles. These cellular modems are assigned a unique cellular identifier and generate historical and prospective records similar to a traditional cellular phone. The unique cellular identifier is associated with a specific VIN. These records can assist law enforcement in identifying the location of the vehicle including patterns of travel and areas where the subject have frequented. In particular, victim statement revealed the vehicle was used to reside in during the night throughout the weeks Japhet and her son were with Duarte.

23. Most Original Equipment Manufacturing (OEMs) have partnered with AT&T or Verizon to provide cellular connectivity within their vehicles.

24. A check of open-source information from Chevrolet identified the **2022 Chevrolet Equinox** as a vehicle equipped with a WiFi hotspot that is serviced by AT&T, identified as the SUBJECT ACCOUNT.

25. In my training and experience, I have learned that AT&T is a company that provides cellular communication service to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) cell-site data, also known as "tower/face information" or cell tower/sector records, and (2) E-911 Phase II data, also known as GPS data or latitude-longitude data.

26. Cell-site data identifies the "cell towers" (i.e. antenna towers covering specific geographical areas) that received a radio signal from the cellular devise and, in some cases, the "sector" (i.e. faces of the towers) to which the devise connected. These towers are often a half mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

27. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone number involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to

which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as the Service Provider typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

28. E-911 Phase II data providers relatively precise location information about their cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. E-911 Phase II data is typically more precise than cell-site data. Based on my training and experience, I know that the Service Provider can collect E-911 Phase II data about the location of the SUBJECT ACCOUNT, including by initiating a signal to determine the location of the SUBJECT ACCOUNT of the Service Provider's network or with such other reference points as may be reasonably available.

29. Providers may also be able to provide information regarding the estimated distance that the phone was located from the tower at the time the communication occurred. This information is referred to by various names, including round-trip time (RTT -Verizon), True Call, Advance Timing, NELOS, or equivalent.

30. Based on my training and experience, I know that wireless providers such as AT&T typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as AT&T typically collect and retain information about their subscribers' use of

the wireless services, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information can be used to identify the SUBJECT ACCOUNT's user or users and may assist in the identification of co-conspirators and/or additional victims.

## AUTHORIZATION REQUEST

31. Based on the forgoing, I request the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

32. I further request that the Court direct the Service Provider to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.

33. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is a reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the SUBJECT ACCOUNT would give that person an opportunity to destroy evidence, change patterns of behavior, and flee from prosecution. See 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. See U.S.C § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic

information, there is reasonable necessity for the seizure for the reasons set forth above. See 18 U.S.C. § 3103a(b)(2).

34. Because the warrant will be served on the Service Provider, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant any time in the day or night. I further request that the Court authorize execution of the warrant at any time of day or night.

## ATTACHMENT A

**Property to be Searched**

1. Records and information associated with the cellular device assigned Vehicle Identification Number (VIN) 2G4WS52J9Y1351444 ("the SUBJECT ACCOUNT"), with an unknown listed subscriber, that is in the custody or control of AT&T Corporation (AT&T or Provider), a wireless communications service provider that is headquartered at North Palm Beach, Florida.
2. The SUBJECT ACCOUNT.

# ATTACHMENT B

## Particular Things to be Seized

I. Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

The following subscriber and historical information about the customers or subscribers associated with the SUBJECT ACCOUNT for the time period **May 21, 2025, to Present**:

a. Names (including subscriber name, usernames, and screen names);

b. Addresses (including mailing addresses, residential addresses, business addresses, and email addresses);

c. Local and long-distance telephone connection records;

d. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

e. Length of services (including start date) and types of service utilized;

f. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"), Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Service

Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

g. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

h. All records and other information (not including the contexts of communications) relating to wire and electronic communications sent or received by the SUBJECT ACCOUNT, including;

   i. The date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

   ii. Information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received, as well as per-call measurement or timing advance data (PCMD, RTT, True Call, Advance Timing, NELOs, or equivalent).

II. Information to be Seized by the Government

All information described above in Section I that will assist in identifying the location of the vehicle including patterns of travel and areas where the subject has frequented.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly describer in this Warrant.